IN THE MATTER OF JEROME BRICKER, AN ATTORNEY AT LAW.

Argued March 23, 1982—Decided June 17, 1982.

*Colette A. Coolbaugh,* Secretary, argued the cause for complainant Disciplinary Review Board.

*Alan Wasserman* argued the cause for respondent (*Bressler, Blaustein & Wasserman,* attorneys).

PER CURIAM.

The respondent was convicted of several criminal charges based on two separate State Grand Jury indictments. Under Indictment SGJ 51–78–4 defendant was found guilty by a jury of conspiracy to obstruct justice in violation of *N.J.S.A.* 2A:98–1(h) and 2A:98–2, of using a corporation to commit fraud in violation of *N.J.S.A.* 2A:111–14, and of two instances of false swearing in violation of *N.J.S.A.* 2A:131–4. On April 3, 1980, respondent received an aggregate sentence of a minimum term of one year and a maximum term of two years in the New Jersey State Prison and a fine of $1,000 on each count, in

addition to two years probation upon his release. Respondent also pleaded guilty to the first count of a three-count State Grand Jury indictment, SGJ 47–78–8, which charged him with using a corporation to defraud in violation of *N.J.S.A.* 2A:111–14. On May 19, 1980, he was sentenced on this charge to a custodial term identical to and concurrent with the sentence imposed under Indictment SGJ 51–78–4.

Following his parole and release of September 1980, the District V Ethics Committee processed ethics complaints against respondent based upon these criminal convictions. The Committee determined that respondent was guilty of unethical conduct and issued a presentment. While the presentment did not specifically enumerate the disciplinary rules that respondent violated, it is clear that it incorporated the statement of charges formally brought against him, which included charges for violating *DR* 1–102(A)(1) (a lawyer shall not violate a disciplinary rule); *DR* 1–102(A)(3) (a lawyer shall not engage in illegal conduct that adversely reflects on his fitness to practice law); *DR* 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and *DR* 1–102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law). The matter was then heard by the Disciplinary Review Board.

The Board held a hearing on November 8, 1981. At that hearing respondent presented matters in extenuation of his criminal conduct. As to the charges which resulted from his convictions under Indictment SGJ 51–78–4, respondent contended that he was innocently brought into a criminal scheme concocted by codefendants, that he was ignorant of the criminal implications of his conduct, and that he had endeavored to secure adequate payment to the victim of the fraud. He also asserted that his wrongful conduct preceded his admission to the bar. As to the charges to which he pleaded guilty under Indictment SGJ 47–78–8, he contended that he did not have the financial or emotional resources to defend himself.

The Disciplinary Review Board found these reasons for excuse or leniency unpersuasive. The criminal events that were the subject matter of the disciplinary proceedings each involved concerted and premeditated schemes to defraud. In the case involving Indictment SGJ 51–78–4, respondent and others obtained title to two parcels of land in Morris County through fraud and deception. Respondent engaged in misrepresentations to an elderly person, Constance Lucille Smith, who had an ownership interest in the property. As a result, defendants, through a corporate structure, obtained a quit claim deed for the property at a small price. Their purpose was to establish an ownership claim to the property, which was essential to the land development plans of a third person. The scheme was to obstruct the land development and thereby secure for themselves a generous price for the land. Defendants were successful and eventually obtained $95,000 in settlement of lawsuits challenging their ownership. Throughout these proceedings respondent resorted to repeated acts of false swearing, fraud and deception. Even his payment of additional moneys to Ms. Smith was a belated tactic designed to suggest that she had not been fraudulently or wrongfully ousted from her title. In truth, the payment to Ms. Smith, ostensibly in her capacity as a partner or stockholder in defendants' corporation, was a ruse to disguise the original deception practiced upon her.

Similarly, in connection with the charge to which respondent pleaded guilty under Indictment SGJ 47–78–8, respondent, as an employee or agent of a corporation, obtained title to real estate in Ocean County through fraud and deception. He engaged in a misrepresentation that heirs to the record owners of the property had been contacted or notified, when this was not done. He then fraudulently used his asserted ownership interest, through a corporation, to extract a high price for the land from third persons whose development plans were otherwise blocked by respondent's bogus title claim.

■ As noted by the Disciplinary Review Board, these judgments of conviction are conclusive evidence of respondent's guilt and obviate the need for any independent examination of the underlying facts to ascertain guilt. *In re Rosen*, 88 *N.J.* 1 (1981). Regardless, the facts are not vulnerable to any serious challenge. They are confirmed by the criminal convictions and, to the extent that our independent assessment of these facts is relevant to discipline, the underlying facts are buttressed by the materials set forth in the presentence investigation reports and referred to generally in the hearings below.

The Disciplinary Review Board recommended that respondent be disbarred. It quite properly noted that while some of the criminal acts engaged in by respondent preceded his admission to the bar, the criminal conspiracy and overt acts in furtherance of it continued for a considerable period of time after his admission to practice law. See *In re Franklin*, 71 *N.J.* 425 (1976).

In weighing the gravity of respondent's conduct justifying the ultimate professional sanction of disbarment, the Board took particular note of the reasons expressed by Judge Egan for imposing a state prison custodial sentence upon respondent. The judge perceptively described the essence and enormity of respondent's underlying wrong as follows:

> Although first offenders are generally not given custodial sentences there are aggravating factors that mandate a prison sentence in this case. Defendant is an educated man and an officer of the Court by reason of his license to practice law. He has consciously betrayed the trust of the Courts which licensed him. His deceit and dishonesty, first offense or not, was not an impulsive or aberrational act arising out of mitigating pressures but a continuing, on-going, carefully planned course of conduct extending over a period of years during which he had to think about what he was doing. His motivation was greed unchecked by conscience or integrity. The pity of it is that apparently he fails to see the ramifications of his greed. He and both of his co-defendants are classic examples of the white-collar criminal who subtly and insidiously destroys the fabric of our society and our government. It is bad enough that he cheated and lied for profit. It is intolerable that he perverted the administration of justice by lying to the Courts in which he was trusted as an attorney. His crimes cannot help but tarnish the public image of the decent members of his profession. Although his conduct is typical of only a miniscule segment of that

profession, it is imperative that he and all its members be deterred by the unequivocal warning that betrayal of their position and their trust cannot be condoned ...

Respondent's misdeeds are the antithesis of an attorney's obligation to uphold and honor the law. *In re Schleimer*, 78 *N.J.* 317, 319 (1978); *In re Brinkmann*, 67 *N.J.* 385, 386 (1975). While the Disciplinary Review Board did not specify the particular disciplinary rules that respondent violated, respondent has raised no argument on fair notice or due process grounds that the determination is invalid. The evidence has clearly and convincingly demonstrated that respondent has engaged in ethical misconduct that violates Disciplinary Rules 1–102(A)(1), (3), (4) and (6).

Respondent's conduct demonstrates his unfitness to engage in the practice of law. We therefore order that he be disbarred and that his name be stricken from the roll of attorneys-at-law. We further direct respondent to reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

*For disbarment*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, HANDLER, POLLOCK and O'HERN —6.

*Opposed*—None.

### ORDER

It is ORDERED that JEROME BRICKER of Edison be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that JEROME BRICKER be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that JEROME BRICKER comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys; and it is further

ORDERED that JEROME BRICKER reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.